## BECK v. THE GERMAN KLINIK *et al.*

**Malpractice**: BROKEN LEG : NEGLIGENCE IN INSTRUCTING PATIENT : EVIDENCE : SPECIAL FINDING. In an action for malpractice in treating a broken leg, the evidence showed no negligence in the treatment proper, but *held* that there was evidence (see opinion) from which the jury could properly find that defendants were negligent in not properly instructing plaintiff as to the care and use of his wounded leg after the splints and bandages were removed, and in giving him improper instructions, which negligence resulted in the final loss of the limb ; and that for such negligence he was entitled to recover ; also that a general verdict for plaintiff upon such evidence was not in conflict with a special finding that plaintiff exercised ordinary care in the use of his leg after being released from the bandages. [ROBINSON and GRANGER, JJ., *dissenting*.]

*Appeal from Scott District Court.*—HON. W. F. BRANNAN, Judge.

FILED, OCTOBER 28, 1889.

ACTION to recover for malpractice and want of care in the treatment of a broken leg of plaintiff. There was a trial to a jury and a verdict for plaintiff. Defendants appeal.

*Heinz & Hirschl*, for appellants.

*B. Peters, D. B. Nash* and *George E. Hubbell*, for appellee.

BECK, J.—I. The defendant, the German Klinik, is an incorporation, whose business appears to be connected in some way with the treatment of diseased and injured persons. The defendants Gustave Hoepfner and others are members of the incorporation, and surgeons and physicians having charge of the patients treated by the incorporation. Plaintiff, by some accident, broke the bones of his left leg, and employed defendants to treat him. After treatment, according to the usual course pursued by surgeons, which was once or twice renewed, by reason of the fact that the patient had not wholly recovered, the plaintiff was finally discharged from treatment by defendants, or ceased further to employ or consult them. His leg, not being wholly cured, became bent and crooked, and finally, after this suit was commenced, it was amputated by other surgeons. This action is brought to recover for the injuries plaintiff sustained by defendants' neglect and want of skill in the treatment of his broken limb. The case was upon the evidence submitted to the jury, under instructions of which no complaint is made in this court. A general verdict was had for plaintiff, and special findings in response to questions propounded by the court were returned by the jury. They are in the following language: "(1) Did the defendants, or either of them, properly set the plaintiff's leg on December 21, 1885? *Answer*. Yes. (2) Did the said defendants Jaenicke and Hoepfner, or either of them, properly treat the plaintiff from the day on which they set his leg up to the time at which they released him from the splint and bandages? *A.* Yes ; but we do not consider it a perfect cure when discharged. (3) Were the methods and appliances which defendants used in plaintiff's treatment such as are found among the different methods and appliances used and approved of by

physicians who were possessed of and who exercised, at least, the average skill of the medical profession as a body at that time? *A.* Yes. (4) Was plaintiff's leg, when taken from the splint and bandages, as crooked, or nearly as crooked, as when amputated? *A.* No. (5) Did plaintiff exercise ordinary care in the use of his leg after being released from the bandages? *A.* Yes." Defendants moved that the general verdict be set aside, and that judgment be rendered for them upon the special findings. This motion was overruled, and judgment was rendered for plaintiff· on the general verdict. This action of the court constitutes the only ground of complaint of defendants on this appeal.

II. It is insisted that the special findings are inconsistent with the general verdict, and are such as show that defendants are not liable in this action, and therefore a judgment thereon should have been rendered for defendants. The instructions given to the jury are not complained of by defendants. Among others the following was given: "When the defendants undertook the treatment of this case, the duty rested upon them to give to it such care and skill as the ordinarily educated and skilled members of their profession, at the time, would have given to it, and to give to the patient proper instructions for the care and use of the wounded limb. If the evidence satisfies you that they did this, then they did all that the law required of them, and they would not be liable. It is for you to say, from the evidence before you, whether they gave to the treatment of the case such skill, care and attention, or not, and to the patient proper instructions for the care and use of the wounded leg. If they did not, they were guilty of negligence, and would be liable for injury resulting from such negligence, unless the evidence satisfies you that the plaintiff contributed to such injury by his own negligence and want of care." It will be observed that this instruction declares, rightly enough, that defendants were charged with the duty, among others, of giving plaintiff "proper instructions for the care and use

of the wounded leg," and that, if they omitted this duty, they were guilty of negligence, and would be liable for injury resulting therefrom. The rule of law is doubtless correct. At all events, it is the law of this case, and so recognized by both parties, neither objecting to it. Now, if the jury found that defendants failed in the discharge of duty as stated in this instruction, they rightly found for plaintiff upon the general verdict. There was evidence tending to authorize such a finding, which is sufficient to support it. A brief reference to the evidence found in the original and amended abstracts fully sustains this conclusion. The plaintiff and two or more witnesses testify that the defendants directed plaintiff to use his limb after the gypsum bandages used to keep the bones in place were removed, and to walk with crutches, and that they gave no directions further as to the manner or extent of such use. There was evidence tending to show that the broken bone had not well united, either because of improper treatment or because of its diseased condition, and that when the bandage was removed, or soon thereafter, the limb, at the wounded part, was crooked. These facts the jury were authorized to find from the evidence. They are shown by the testimony of physicians and surgeons and other witnesses, who testified in the case. One of the surgeons, Dr. Grant, testifies, upon an examination of the limb after amputation, that there was a diseased condition of the bone, which might have been caused by "a splinter or a muscle getting between the bones," and in that case walking would irritate and produce a tendency to disease. He further declares: " I would instruct my patient not to walk on a leg I found not united. The least weight of the foot after patient commenced walking would tend to separate that at the top [pointing to a portion of the bone, having the amputated limb before him]. If the bone, when set confined in its apparatus for eight weeks, came out in that crooked condition or form, then the tendency of the use of that limb in walking would impair its efficiency, and

would induce disease." The recitation of other evidence in the case is not demanded to support our conclusion. Upon the evidence we have quoted from the abstracts, and other evidence found therein, the jury were authorized to find that plaintiff had no correct instruction as to the proper care and use of his wounded leg ; that he had wrong instructions, which directed him. to use his leg; that the diseased condition of the bone was caused or aggravated by use of the leg, which defendants directed ; and that with proper instructions, which we will presume plaintiff would have followed, his leg would have been saved, or at least the disease of the bone would have been ameliorated, and he would have escaped much suffering. There is nothing in the special findings of the jury in conflict with the finding of negligence in the failure of the defendants to give plaintiff proper instructions, or in giving improper instructions as to the care and use of his wounded leg, upon which the general verdict was undoubtedly based. The jury found specially that defendants properly set plaintiff's leg ; that they properly treated it until he was discharged ; and that they used proper and approved methods and appliances in the treatment of the leg,— but it is nowhere found, directly or by implication, that they gave plaintiff proper instructions, or did not give him improper instructions, for the care and use of his injured leg. Defendants may have exercised proper care, and used proper skill in all things, yet, under the law of the case, if they omitted to give plaintiff proper instructions for the care and use of his wounded leg, they were rightly held liable by the jury. As we have said, the jury were authorized to find for plaintiff under the evidence, on the ground of defendants' negligence in the omission to discharge their duty to instruct plaintiff as to the care and use of his injured leg. For these reasons we reach the satisfactory conclusion that the judgment of the district court ought to be

AFFIRMED.

ROBINSON, J. (*dissenting*).—The special findings
show that defendants discharged fully all duties which
devolved upon them to the time when plaintiff was
released from the splint and bandages. They had prop-
erly set the broken bones, and had given the injured
limb their personal supervision for eight weeks. Plain-
tiff was young and healthy, and the uncontradicted
evidence proves that, under the conditions shown, the
broken bones should have been healed when the splint
and bandages were removed. When that was done
defendants instructed plaintiff to procure and use
crutches in walking. The special findings show that
plaintiff exercised ordinary care in the use of his leg
after that time. The instructions which plaintiff
admits having received from defendants necessarily
informed him that the injured limb was not entirely
cured; that he should use crutches in walking, and
should be careful in using it. What further instruc-
tions, if any, should have been given, the record
nowhere discloses. No evidence, whatever, was offered
as to the instructions which should have been given
plaintiff when the splint and bandages were removed.
The jury were left wholly without the aid of evidence
to determine that matter. As they were not experts,
the plaintiff was as competent to determine what
instructions should have been given, and consequently
the care and use of his injured limb which would have
been proper, as were the jury. But the jury found that
he used ordinary care. Therefore no damage could
have resulted from the failure of defendants to give
such instructions as the jury were competent to find
should have been given. The fact that a perfect cure
had not been effected when the splint and bandages
were discarded does not alter the case under the law as
announced to the jury. They were charged that a
"physician or surgeon, in undertaking the treatment of
a patient, does not thereby insure a cure." Plaintiff
was not under the personal care of defendants, but was
treated at his own home. The splint and bandages

were removed about the first of February, 1886. Plaintiff did not see defendants from that time until the month of June following, when he went to them with a brother, who had an injury which required surgical attention. Defendants then noticed that the limb was crooked, and advised plaintiff that he should have treatment at his home or in hospital. He refused to have it so treated, but consented to have defendants place around the limb a plaster of Paris bandage, which was designed as a support. That was removed in about one month, and defendants did not again see plaintiff until near the end of that year. It was then found that the limb had continued to grow worse, but the defendants were refused permission to treat it further. It thus appears that plaintiff refused to follow the advice of defendants when given. The opinion of the majority ignores the fact that, even if defendants neglected to give proper instruction to plaintiff, yet they would not be liable for such neglect unless injury resulted. The record before us contains no evidence which even tends to show that the condition of which plaintiff complains would have been avoided had defendants given instructions which were not given. It seems to me that the majority opinion casts upon defendants the burden of proving what instruction, if any, should have been given plaintiff; that such instructions were in fact given, or, if omitted, that none of the damage of which plaintiff complains resulted from such omission. That the law does not impose such burden upon defendants is evident. Defendants are presumed to have discharged all obligations which rested upon them until the contrary is shown. A part of the relief asked by defendants is that the general verdict be set aside because not supported by the evidence, and to that, I think, they are entitled. This does not seem to me to be a case where there is a conflict in the evidence, but rather one where there is an entire absence of evidence on the material issues not settled by the special findings to support the general verdict.

GRANGER, J., concurs in this dissent.